**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **STEVEN BRADLEY MELL,**<br><br>Plaintiff,<br><br>v.<br><br>**THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, *et al.*,**<br><br>Defendants. | Civil Action No. 25-1515 (ZNQ) (RLS)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants The Guardian Life Insurance Company of America ("Guardian") and Berkshire Life Insurance Company of America ("Berkshire") (collectively, "Defendants"). ("Motion," ECF No. 14.) Defendants submitted a Brief in support of their Motion. ("Moving Br.," ECF No. 14-1.) *Pro se* Plaintiff Steven Bradley Mell ("Mell" or "Plaintiff") filed a Brief in Opposition ("Opp'n Br.," ECF No. 15) to which Defendants submitted a Reply. ("Reply Br.," ECF No. 16.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT IN PART and DENY IN PART** the Motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

The information below is taken from the Amended Complaint and the documents upon which Plaintiff relies in his Amended Complaint.[1]

Plaintiff held a disability insurance policy (the "Policy") with Defendants for almost thirty years. (FAC ¶ 12.) Plaintiff was required to pay an annual premium to maintain the Policy. (*Id.* ¶ 17.) In the event of a lapse, the Policy included a specific reinstatement provision.

Plaintiff did not pay the premium in April 2024. (*See Id.* ¶ 36.) Defendants sent Plaintiff a letter informing him that his premium was past due. (*Id.* ¶ 13.) Once Plaintiff learned of the lapse, he paid his premium through his daughter on October 1, 2024. (*Id.* ¶ 42.) Defendants deposited Plaintiff's check but then refunded it on October 23, 2024. (*Id.* ¶¶ 44–45.)

Plaintiff filed his original Complaint on or about February 27, 2025. The Court accepted the Complaint for filing on March 6, 2025, when Plaintiff paid the required filing fee. Defendants filed a motion to dismiss on May 12, 2025. The Court granted the motion and dismissed the original Complaint with leave to amend. Plaintiff filed a first amended complaint ("FAC") on January 13, 2026. Plaintiff now asserts three claims: Breach of Contract (Count I); "Declaratory Judgment (Excuse of Condition & Ambiguity)" (Count II); and Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III).

---

[1] For the purposes of this motion, the Court assumes as true the facts alleged in the Complaint. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The Court is permitted to consider "document[s] integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Plaintiff references the Policy in his Amended Complaint, so the Court may consider it even though he did not include a copy with his Amended Complaint. For the same reason, the Court also considers correspondence Defendants sent to Plaintiff regarding the lapse in his coverage.

## II. SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

## III. LEGAL STANDARD

A district court may grant a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (citation modified).

Thus, to survive a motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). The court may, however, ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *See Iqbal*, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor*, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

"[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)

(quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Because Plaintiff brings this action *pro se*, the Court will liberally construe the FAC and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).

## IV. DISCUSSION

As with the original Complaint, Defendants argue that the Amended Complaint should be dismissed because (1) Plaintiff did not reapply for reinstatement of the Policy as required and (2) Defendants fulfilled all their contractual obligations under the Policy. (Moving Br. at 1.)

Plaintiff responds by alleging that Defendants (1) reinstated the Policy under its original terms by accepting his premium, (2) did not require a reinstatement application, and (3) knew that he was unable to comply with the Policy's other reinstatement procedures because he was incarcerated. (Opp'n Br. at 1–2.)

### A. COUNT I

Count I of the Amended Complaint alleges that Defendants breached the Policy's automatic reinstatement provision by "accept[ing] the premium by negotiating the check and holding the funds for approximately three weeks." (FAC ¶ 50–51.) Under New Jersey law, the elements of a breach of contract claim are "(1) a contract; (2) a breach of contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties."[2] *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citations omitted). A party breaches a contract when he "violates the terms of a contract by failing to fulfill a

[2] The parties have not provided any bases for applying New Jersey law when analyzing the contract claims. However, the Policy contains a "New Jersey Amendatory Rider," suggesting the parties' intention to invoke New Jersey law. (ECF No. 14-2 at 12.) Therefore, for the purposes of this Motion, the Court applies New Jersey substantive law while applying federal law to its procedural issues. *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181–82 (3d Cir. 2017).

requirement enumerated in the agreement." *Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019).

In this matter, the parties agree that the Policy was a valid contract. Plaintiff concedes that he allowed the Policy to lapse by its terms. (Opp'n Br. at 2) ("In April 2024, an inadvertent lapse occurred.") Plaintiff nevertheless insists that a "Silver Bullet clause" in the Policy created "an explicit, overriding exception" to the typical reapplication process. (Opp'n Br. at 2.) Defendants disagree.

Generally, "[w]hen interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning." *President* v. *Jenkins*, 853 A.2d 247, 254 (N.J. 2004) (internal quotation marks omitted). There is ambiguity in an insurance policy when "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Katchen v. Government Emps. Ins. Co.*, 202 A.3d 627, 629 (N.J. App. Div. 2019) (quoting *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788 (1979)).

Here, the Policy's terms with respect to reinstatement are explicit and unambiguous.

> **Reinstatement**
>
> If this policy has lapsed at the end of the grace period, you can still keep it in force by paying the first overdue premium within 45 days of the time it was due.
>
> After that, you can reinstate this policy under the following conditions:
>
> - You must complete an application
> - You must pay all overdue premiums, for which we will issue a conditional receipt.
> - We will place this policy back in force on the date we approve your application. But if we have not approved or refused your application within 45 days after we have given a receipt, this policy will be reinstated on that 45th day. If we

> refuse to place this policy back in force, we will refund your premium.
>
> In any case, this policy will be reinstated on the date that we or our agent accept a premium *and do not ask for an application*.

(Policy at 7) (emphasis added).

Unfortunately for Plaintiff, for the "Silver Bullet clause" to apply, Guardian must "accept a premium and . . . not ask for an application." [3] (ECF No. 14-2 at 10; *see* FAC ¶ 18.) But Guardian *did* ask for an application. As Plaintiff concedes, in its July 7, 2024 letter to Plaintiff, Guardian made a reinstatement application available to Plaintiff and expressed that it "sincerely hope[d]" Plaintiff would reapply. (FAC ¶ 39; July 7, 2024 Letter, ECF No. 6-3.[4]) But according to Plaintiff, Defendants' letter was not enough. They needed to use "mandatory language such as must, shall or will" to have "ask[ed] for an application" within the meaning of the reinstatement provision. (*Id.* ¶ 38.) Plaintiff offers no basis in law or logic for this additional requirement. The Court will not read it into the Policy's already clear and unambiguous language. Plaintiff therefore has not pled a plausible claim for breach of contract. Accordingly, his breach of contract claim will be dismissed.

### B. COUNT II

Plaintiff pleads in Count II that the application requirement should be excused under the doctrines of impossibility, prevention, or ambiguity. (FAC ¶¶ 52–56.) For the reasons already set

---

[3] The parties disagree on whether Guardian accepted Plaintiff's payment. In New Jersey, an insurance company is deemed to have accepted an overdue renewal premium on the date of receipt, unless the premium is returned promptly. *See Provident Life and Cas. Ins. Co. v. Fein*, 708 A.2d 419, 426 (N.J. App. Div. 1998). What constitutes "promptly" need not be resolved in this case because the terms of the reinstatement provision of the Policy effectively give Guardian 45 days to return a premium, and Guardian returned Plaintiff's funds well within that period.

[4] The July 7, 2024 letter included the following relevant paragraph that explicitly sought Plaintiff's re-application: "We sincerely hope that you will consider applying for reinstatement of your policy. If you would like to request an application for reinstatement, please email us at **dicustomerservices@glic.com**. Please provide the policy number(s) you are looking to reinstate, and we will email the application(s) back to you within 2 business days." (ECF No. 6-3) (emphasis in original).

forth above, there is no ambiguity to construe against Guardian. Neither of the other doctrines apply.

Pursuant to the "doctrine of impossibility or impracticability of performance, a party is excused from having to perform his contract obligations 'where performance has become literally impossible, or at least inordinately more difficult, because of the occurrence of a supervening event that was not within the original contemplation of the contracting parties." *Mehta v. Mishra*, App. No. A-2083-23, 2025 WL 1949556, at *3 (N.J. Super. Ct. App. Div. July 16, 2025). Plaintiff's incarceration did not cause the performance of his contractual duties to be either impossible or impractical. Even while incarcerated, Plaintiff could have submitted his premium payment on time as evidenced by the fact Plaintiff submitted his late payment through his daughter. (*See* FAC ¶ 42.) As Defendants argue, once Plaintiff became aware that the Policy lapsed, he could have contacted Defendants using the telephone numbers or mailing address listed on their communications. (Moving Br. at 10.)

"Under the 'generally recognized' doctrine of prevention, where a contracting party prevents or hinders its contractual partner from performing under the terms of the contract, the resultant failure to perform in accordance with such contractual terms may be waived or excused." *Kaiser Found. Health Plan, Inc. v. Medquist, Inc.*, Civ. No. 08-4376, 2009 WL 961426, at *5 (D.N.J. Apr. 8, 2009). The doctrine of prevention may be invoked to excuse performance when "the promisor has caused the non-performance of the condition." *Creek Ranch, Inc. v. New Jersey Turnpike Auth.*, 383 A.2d 110, 116 (N.J. 1978) (quoting 5 Williston, Contracts, s 677 at 231–232 (3d ed. 1957)). Plaintiff alleges that "Defendants prevented performance by mailing notice to a terminated Attorney-in-Fact, thereby delaying actual notice until just **4 days** before the deadline."

(FAC ¶ 55) (emphasis in original.) This notice shows Defendants' attempt to facilitate, rather than prevent, a reinstatement application submission by Plaintiff. (June 7, 2024 Letter, ECF No. 14-3) ("We sincerely hope that you will consider applying for reinstatement of your policy.") Whether Defendants knew that their communications were being sent to a terminated Attorney-in-Fact does not help Plaintiff because Plaintiff's obligations to pay his insurance premium or submit a reinstatement application are independent of Defendants' ability to reach him in the event of *his* breach. (*See* Policy at 7.)

**C. COUNT III**

Plaintiff alleges that Defendants created a "digital trap" that excluded incarcerated policyholders, should have "conduct[ed] a standard skip-trace" when the Policy lapsed, and ignored knowledge of his incarceration and its effect on his ability to communicate. (FAC ¶¶ 60–62.) Because Plaintiff pleads facts that allege a plausible principal-agent relationship between Agent Kaplan and Guardian, the Court denies Defendants' motion to dismiss his claim for breach of the implied covenant of good faith and fair dealing.

In New Jersey, every contract implies a duty of "good faith and fair dealing in both performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 864 A.2d 387, 396 (N.J. 2005). "A plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." (*Id.*) "[T]he duty of good faith and fair dealing cannot alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 518 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010) (citations

and interior quotation marks omitted). "[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive." *Wade v. Kessler Inst.*, 798 A.2d 1251, 1260 (N.J. 2002) (quoting *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001)). Insurance companies are required "to exercise good faith in its dealings with the insured, particularly when the insured's money or other interests . . . may be at risk." *American Home Assur. Co. v. Hermann's Warehouse Corp.*, 563 A.2d 444, 447 (N.J. 1989); *see Hand v. Philadelphia Ins. Co.*, Civ. No. 08-1738, 2012 WL 3021860 at *9 (N.J. Sup. Ct. App. Div. 2012) ("An insurer's duty to scrupulously act in good faith toward its insured is a principle recognized in New Jersey for decades.").

In New Jersey, a principal-agent relationship is created when one party (the principal) "consents to have another act on its behalf" (the agent). *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993). Courts look at the parties' conduct when determining whether an actual agent relationship exists. (*Id.*) Absent the existence of an actual agent relationship, under the doctrine of "apparent authority," a principal is liable for the acts of another "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Estate of Cordero v. Christ Hosp.*, 958 A.2d 101, 106 (N.J. Sup. Ct. App. Div. 2008) (quoting *Restatement (Third) of Agency*, § 3.02); *Sears Mortg. Corp.*, 634 A.2d at 79 ("Even if a person is not an 'actual agent,' he or she may be an agent by virtue of apparent authority based on manifestations of that authority by the principal."). "[A] principal is deemed to know facts that are known to its agent." *NCP Litig. Tr. v. KPMG LLP*, 901 A.2d 871, 879 (N.J. 2006).

According to the Amended Complaint, Agent Kaplan "served as the primary conduit for policy administration, coverage inquiries, and service requests between Plaintiff and Defendants." (FAC ¶ 12.) Agent Kaplan signed the original Policy application and Defendants instructed Plaintiff to contact Agent Kaplan with any questions regarding reinstating the Policy. (*Id.* at ¶¶ 11, 13–14). Because Plaintiff alleges that Agent Kaplan was a representative of Defendants for the purposes of the Policy, he has pled a principal-agent relationship between Agent Kaplan and the Defendants. Even assuming that the facts contained in the Amended Complaint were insufficient for pleading a plausible agency relationship between Defendants and Agent Kaplan, by directing Plaintiff to contact Agent Kaplan and referring to him as the "Servicing Agency," it is plausible that Defendants cloaked Agent Kaplan with the appearance of apparent authority. (*Id.* at ¶ 13.)

As a result of their alleged agency relationship, knowledge of Plaintiff's incarceration — and the resulting communication difficulties — may be imputed from Agent Kaplan to Defendants. (*See id.* at ¶ 28.) Defendants' knowledge of Plaintiff's incarceration colors their attempts to notify Plaintiff of the lapse of the Policy. Knowing that Plaintiff was incarcerated would allow for Defendants to direct communications to his specific location using the Bureau of Prison's "Inmate Locator" website. (*See id.* at ¶ 21.) Plaintiff also alleges that Defendants sent notices to an Attorney-in-Fact they knew no longer represented him. (*Id.* at ¶ 33.) These pled facts, in combination with "[a]n insurer's duty to scrupulously act in good faith toward its insured" rise above an "abstract" allegation of malice and plausibly state a claim against Defendants for breach of the covenant of good faith and fair dealing.

## V. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART and DENY IN PART** Defendants' Motion to Dismiss in part. The Court will dismiss Plaintiff's breach of contract and excuse of conditions claims, Counts I and II. The Court additionally finds that further amendment to the Complaint would be futile given the nature of the obstacles to Plaintiff's claims that are set forth above. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002). Accordingly, Plaintiff's Counts I and II will be **DISMISSED WITH PREJUDICE**.

The Court will **DENY** Defendants' Motion to Dismiss Plaintiff's Count III. An appropriate Order will follow.

Date: September 24, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**